**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michele Almeleh, | No. MC-22-00012-PHX-MTL |
| Petitioner, | **ORDER** |
| v. | |
| United States of America, | |
| Respondent. | |

Pending before the Court is Petitioner Michele Almeleh's Petition to Quash two summonses issued by the Internal Revenue Service ("IRS") (Doc. 1) and Respondent's Motion to Enforce the same summonses (Doc. 10). For the following reasons, the Court denies Petitioner's Petition to Quash and grants Respondent's Motion to Enforce.

**I.     BACKGROUND**

Almeleh is the treasurer of two related corporations, C&M Insurance Partners Protected Cell ("C&M") and Arc Tec, Inc. ("Arc Tec"). The IRS issued six total summonses to Almeleh in her capacity as treasurer of both companies during its investigation of the companies' captive insurance arrangement and the propriety of related tax deductions and income exclusions taken between December 31, 2018, and December 31, 2020. Prior to issuance of the summonses, the IRS issued several Information Document Requests ("IDRs") to Almeleh for a variety of business records related to both companies. The parties dispute whether Almeleh provided complete responses to the IDRs and whether issuance of those IDRs was motivated by an improper purpose.

Following Almeleh's responses to the IDRs, the IRS issued the summonses requiring Almeleh to produce additional information. Another court in this District has ruled on the enforceability of the two summonses issued to Almeleh in her capacity as Arc Tec's treasurer. *See Almeleh v. USA*, No. MC-22-00013-PHX-DWL, 2022 WL 7033677 (D. Ariz. Oct. 12, 2022). Accordingly, only the summonses issued to Almeleh in her capacity as treasurer for C&M are at issue here.

The IRS issued two summonses to Almeleh in her capacity as treasurer of C&M.[1] Both were personally served on her on March 10, 2022. (Doc. 12-1 at 3; Doc. 12-2 at 2.) The first summons sought testimony and the production of "books, records, papers, and other data" as identified in its attachments. (Doc. 12-1 at 2.) The second sought testimony "relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offence connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown." (Doc. 12-2 at 1.) Almeleh did not produce any documents in response to the summonses and did not appear on the requested dates.

On March 24, 2022, Almeleh filed a Petition to Quash the summonses issued to her as treasurer of C&M. (Doc. 1.) On June 7, 2022, the United States filed a combined motion for enforcement of the summonses and denial of Almeleh's Petition. (Doc. 10.) The United States' motion has been fully briefed and the Court now rules.

## II. LEGAL STANDARD

The prior ruling summarized the prevailing legal standard for summons enforcement proceedings:

> Substantively, "[t]o obtain enforcement of a summons, the IRS must first establish its 'good faith' by showing that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS' possession; and (4) satisfies all administrative steps required by the United States Code."

---

[1] The parties' arguments related to two additional, improperly served summonses are discussed in Part III.B *infra*.

>*Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995). These are often referred to as the "*Powell* requirements" because they are derived from *United States v. Powell*, 379 U.S. 48 (1964). *Id.* "The government's burden is a 'slight one' and typically is satisfied by the introduction of the sworn declaration of the revenue agent who issued the summons that the *Powell* requirements have been met." *Id.* "Once a prima facie case is made, a 'heavy' burden is placed on the taxpayer to show an 'abuse of process' or 'the lack of institutional good faith.'" *Id.* (quoting *United States v. Dynavac*, 6 F.2d 1407, 1414 (9th Cir. 1993)).

*Almeleh*, 2022 WL 7033677 at *3.

### III.  ANALYSIS

#### A.  Jurisdiction

The parties dispute whether this Court has jurisdiction to evaluate the merits of Almeleh's Petition to Quash and whether the Petition is barred by sovereign immunity. According to the IRS, Almeleh's Petition is procedurally improper because the tax code does not allow for motions to quash unless the underlying summons is for third-party records. (Doc. 11 at 7–8.) In response, Almeleh asserts that her Petition is appropriate because the IRS failed to provide the required third-party notice to Arc Tec and C&M's other officers, and, in the alternative, that the summonses issued as to Arc Tec and C&M are third-party summonses to each other. (Doc. 13 at 3–5.)

Regardless, in response to Almeleh's Petition, the IRS filed its Motion to Enforce the same summonses underlying the Petition and the parties do not dispute that the Court has jurisdiction to decide whether the summonses are enforceable pursuant to that motion and 26 U.S.C. § 7402(b). *See United States v. Samuels, Kramer, & Co.*, 712 F.2d 1342, 1344 (9th Cir. 1983). "And if enforcement is appropriate, it follows that Almeleh's motion to quash (assuming it is even properly before the Court) must be denied." *See Almeleh*, 2022 WL 7033677 at *3.

#### B.  Service

Within Almeleh's jurisdictional arguments, she also argues that the IRS failed to

properly serve the summonses on her, such that they are unenforceable. (Doc. 13 at 5–7). Almeleh contends that the summonses she received were not properly served because they "are not executed by an IRS officer or issuing officer as required by Form 2039 and 26 U.S.C. § 7603." (Doc. 1 at 6.) Almeleh refers to and attaches three summonses that order her appearance on April 7, April 13, and April 19, 2022, respectively. (Doc. 1-2; Doc. 1-3; Doc. 1-4.) Only the April 13, 2022 summons is executed and has proof of service. (*See* Doc. 1-3 at 3.) In response, Respondent supplies an affidavit from IRS Agent Guo that explains:

> Prior to the issuance and service of the two summonses for which enforcement is sought, two other summonses to Michele Almeleh, in her capacity as Treasurer of C&M, were left at Ms. Almeleh's residence. These two summonses were not properly issued or served. After Ms. Almeleh received these summonses, C&M's representative Robert Acosta informed me that the compliance date was unworkable for Ms. Almeleh. I issued two new summonses for C&M, the ones at issue in this enforcement proceeding, to reflect a compliance date that was workable for Ms. Almeleh. These two new summonses were properly served by personal delivery by Senior Revenue Agent Coble as previously described and evidenced by the certificates of service.

(Doc. 15-1, ¶ 7.) Regarding the two summonses at issue in this enforcement action, Agent Guo avers:

> In furtherance of the examination and in accordance with 26 U.S.C. § 7603, on March 10, 2022, Senior Revenue Agent Coble served the summonses by personal delivery to Ms. Almeleh, as evidenced by the certificates of service included with summonses and filed at ECF No. 12, Exhibits A and B.

(*Id.*, ¶ 6.) The two summonses attached to Agent Guo's declaration are executed. These summonses require Almeleh to appear on April 13 and May 3, 2022, respectively. Both summonses also include a service of summons executed by Senior Revenue Agent Coble. (*See* Doc. 12-1 at 2-3; Doc. 12-2 at 1-2.) Almeleh only disputes improper service of the unexecuted April 7 and April 19 summonses. Although Almeleh did not attach the May 3,

2022, summonses to her Petition, she does not appear to dispute that this additional summons was properly served on her either. Instead, her declaration states "[t]he Summons in ECF 1-2, ECF 1-3, ECF 1-4 are copies that were provided to me" (Doc. 13-1, ¶ 18), and her arguments focus on the two unexecuted summonses attached to her Petition. Thus, the Court finds that Petitioner's arguments regarding improper service do not affect the enforceability of the two executed summonses for April 13 and May 3 at issue in Respondent's motion.

### C. Enforceability

Almeleh argues both that the IRS has failed to establish good faith under *Powell* and, even if the *Powell* requirements are met, there is evidence that the summonses were issued in bad faith and for an improper purpose. (Doc. 13 at 11–19.)

#### 1. *Powell* Requirements

First, as to whether the summonses were issued for a legitimate purpose, Agent Guo avers that "the IRS seeks to evaluate the deductions taken by Arc Tec in tax years 2018, 2019, and 2020 and the correspondent exclusion from income by C&M" to determine their propriety. (Doc. 12, ¶ 17.) The Internal Revenue Code authorizes the issuance of summonses for such examinations pursuant to 26 U.S.C. §§ 7601 and 7602(a). *See* 26 U.S.C. § 7602(a) ("For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability, the Secretary is authorized . . . to summon the person liable for tax . . . to appear . . . and to produce such books, papers, records or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.") Almeleh asserts that the IRS's entire investigation of captive insurance arrangements is an improper attempt to pressure taxpayers into global settlement under "standardized" and "strict" terms. (Doc. 13 at 12–13.) Almeleh argues that participation in a self-reported captive insurance arrangement is not a legitimate purpose for an examination absent specific facts establishing a reasonable belief that the arrangement is illegal. (*Id.*)

1 Section 7602 does not limit the IRS's authority to issue a summons as suggested by
2 Almeleh, and she does not identify any case law, nor is the Court aware of any, reading a
3 reasonable belief requirement into the statute or the legitimate purpose factor. Instead, the
4 United States Supreme Court has held that the IRS may issue summonses "merely on
5 suspicion that the law is being violated, or even just because it wants assurance that it is
6 not." *Powell*, 379 U.S. 48, 57 (1964). Thus, the Court finds that Agent Guo has stated a
7 prima facie legitimate purpose for the summons under 26 U.S.C. § 7602(a).

8 Regarding whether the summonses seek information relevant to the stated legitimate
9 purpose, Agent Guo further avers that the requested information "may be relevant to
10 determine C&M and Arc Tec's correct federal tax liabilities for tax years 2018, 2019, and
11 2000" and "whether C&M's election to exclude the premiums from income and the
12 deductions taken by Arc Tec are proper." (Doc. 12, ¶ 17.) Almeleh argues that "there is a
13 material dispute of fact whether [Agent] Guo has actually reviewed every document and
14 piece of information received through the IDRs," such that "Respondent cannot in good
15 faith describe with such reasonable certainty the items they need and which documents that
16 they do not already possess from the IDRs." (Doc. 13 at 14.) Agent Guo avers, however,
17 that she has "reviewed all the information that has been produced by C&M to the IRS to
18 date" and the summonses were issued only after she identified that Almeleh provided
19 incomplete information to IDRs 6-13. (Doc. 12, ¶ 24.) Almeleh's bare assertion that Agent
20 Guo did not review the submitted documents does not overcome Respondent's prima facie
21 assertion that the requested documents are relevant to a legitimate examination.

22 Almeleh also vaguely argues that the summonses are overbroad and "a reasonable
23 person cannot infer what specifically is to [be] produced yet alone what exactly the IRS is
24 demanding." (Doc. 13 at 15.) Almeleh does not address why any of the fourteen production
25 requests, some of which have multiple subparts, contained in Attachment 3 to the
26 production summons are overbroad or insufficient. (*See* Doc. 12-1 at 8–10.) Almeleh also
27 fails to address the eight pages of Agent Guo's declaration that provide detailed
28 explanations of how the documents requested are relevant to the IRS's inquiry. Thus, the

Court finds that Agent Guo has made a prima facie case that the information requested in the summonses is relevant to the legitimate purpose of evaluating C&M's captive insurance arrangement with Arc Tec.

Next, as to whether the information is not already within the IRS' possession, Agent Guo avers in a supplemental declaration that the information requested in the summonses is not duplicative of the information previously produced. (Doc. 15-1, ¶ 20.) Agent Guo states "[t]o the extent that C&M has previously provided information that would be responsive to a summons request, the IRS is not seeking the reproduction of that information." (*Id.*) Almeleh argues, without support, that the 3,000 pages she produced in response to the IDRs establish that the IRS already possesses the documents requested. (Doc. 13 at 16.) Almeleh does not sufficiently explain what types of documents she produced or how those documents obviate the IRS's need for the additional documents. The Court finds Agent Guo's declaration credible that she has reviewed Almeleh's production and the document requests in the summons remain outstanding.

Finally, Agent Guo avers that all required administrative steps have been satisfied with respect to the validity of the two summonses served on March 10, 2022. (Doc. 12, ¶ 15.) Almeleh summarily argues that the IRS failed to provide required third-party notice of the summons to C&M and Arc Tec. (Doc. 13 at 16.) Respondent disputes that notice was required because the summonses were issued to Ms. Almeleh in her capacity as an officer of C&M. (Doc. 15 at 8.) Section 7609 outlines the required procedures for third-party summonses. In general, if a summons requires testimony or document production pertaining to any third-party taxpayer who is not the recipient of the summons, notice to that third party is required. 26 U.S.C. § 7609(a)(1). There are several exceptions to the notice requirement, including "any summons . . . served on the person with respect to whose liability the summons is issued, or any officer or employee of such person." *Id.* § 7609(c)(2)(A). Almeleh does not dispute that the summonses were issued to her as an officer of C&M, the company whose liability is the subject of the summonses. (*See* Doc. 12-1 at 2 ("To Michele Almeleh as Treasurer of C&M Insurance Partners Protected Cell").)

The Court finds that third-party notice was not required, and Respondent has satisfied its burden to show that it complied with all relevant administrative steps.

Accordingly, the Court finds that Respondent has established a prima facie case of good faith and the burden shifts to Almeleh to put forth evidence of bad faith or abuse of process. *Dynavac*, 6 F.2d at 1414.

### 2. Bad Faith

The United States Supreme Court outlined the standard for evaluating bad faith in *United States v. Clarke*:

> [T]he taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge. But circumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available. And although bare assertion or conjecture is not enough, neither is a fleshed-out case demanded: The taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive. That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing.

573 U.S. 248, 254–55 (2014). "Bad faith exists where a summons is issued without a legitimate or proper purpose, to abuse a court's process, to harass a taxpayer, to improperly use the requested information, or otherwise to go fishing." *Maxcrest Ltd. v. United States*, 703 Fed. App'x. 536, 537 (9th Cir. 2017). Almeleh argues that the summonses were issued to harass her by requesting "vast and numerous" documents already in the IRS's possession on a short timeframe to pressure her "to settle a collateral dispute" related to the Arc Tec audit. (Doc. 13 at 17–19.) Almeleh contends that the "speed and volume of the IDR's were intentional in an attempt to overwhelm" her:

> For example, [Agent] Guo issued IDRs 1-4 all at once on 3/8/2021 and issued IDRs 5-12 all at once on [3/15/2021]. (Michele Decl. at ¶ 25). IDRs 1-4 were given 21 days to

> respond, or 5.25 days per IDR. (Michele Decl. at ¶ 25). IDRs 5-12 were given 15 days to respond, or just over 2 days per IDR. (Michele Decl. at ¶ 26). Michele felt overwhelmed and harassed upon each of the IDR dumps. (Michele Decl. at ¶ 22).

(Doc. 13 at 19.) Almeleh asserts that Agent Guo refused to provide her with additional time to gather information and documents, despite her requests for an extension. (Doc. 13 at 22.) Almeleh's arguments directly conflict with Agent Guo's sworn declaration that she first contacted C&M representatives, including Almeleh, in November 2021 to follow up on the deficient requests. (Doc. 12, ¶ 25.) The Court finds that a delay of eight months between the issuance of the IDRs and Agent Guo's follow up on the deficient responses does not raise an inference of a bad faith attempt to harass or overwhelm Almeleh with the document requests. Nor does the issuance of the summonses one year after Almeleh was served with the initial IDRs. Almeleh's vague assertions that her "representatives" attempted to secure additional deadline extensions and cooperate in the investigation do not provide enough detail to overcome Agent Guo's prima face case for good faith. *Clarke*, 573 U.S. at 254 ("Naked assertions of improper purpose are not enough[.]").

Almeleh also argues that the IRS and Agent Guo improperly referenced the global settlement multiple times throughout the examination "but they still fail to entertain any changes and refuse to provide calculations so the Petitioner can make an informed decision." (Doc 13 at 21–22.) It remains unclear to the Court how this alleged conduct is relevant to the propriety of the summonses issued in March 2022, but the Court notes that Agent Guo's declaration includes information about detailed attempts to provide additional settlement information and calculations to C&M's representatives, including Almeleh, between November 2020 and August 2021. (Doc. 15-1 at ¶¶ 8–17.) Almeleh does not provide any credible evidence to refute Respondent's position or raise an inference of bad faith on this basis.

Almeleh contends that "[a]lthough no direct statement has been made, it is my subjective belief [] based on interactions with [Agent] Guo that I am being targeted, pressured, and harassed for not signing [the] settlement agreement." The Court finds that

such an allegation also fails to satisfy Almeleh's "heavy burden" to show bad faith or abuse of process. Moreover, Almeleh requests an evidentiary hearing, but she is not entitled to one because she failed to "make a sufficient showing of bad faith" for the reasons discussed above. *Samuel, Kramer, & Co.*, 712 F.2d at 1346–47.

### D. Petitioner's Request for Costs

Almeleh also seeks to recover her incurred costs in filing this action. (Doc. 13 at 22). Because the Court is granting Respondent's motion to enforce the summonses, Almeleh is not the prevailing party and is not entitled to recover her costs. *See* 26 U.S.C. § 7430(a) ("In any administrative action or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax . . . the *prevailing party* may be awarded . . . reasonable litigation costs.") (emphasis added); *see id.* § 7430(c)(4) ("The term 'prevailing party' means any party . . . which . . . has substantially prevailed with respect to the most significant issue or set of issues presented.").

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Respondent's Motion to Enforce (Doc. 10).

**IT IS FURTHER ORDERED** denying Petitioner's Petition to Quash (Doc. 1) as moot.

**IT IS FINALLY ORDERED** directing the Clerk of Court to close this case and enter judgment accordingly.

Dated this 13th day of December, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge